Slip Op. 01-71

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: RICHARD K. EATON, JUDGE**

|  |  |  |
|---|---|---|
| **FORMER EMPLOYEES OF CARHARTT, INC.,** | : | |
| Plaintiffs, | : | |
| v. | : | **Court No. 99-12-00734** |
| **ELAINE CHAO, SECRETARY, UNITED STATES DEPARTMENT OF LABOR**, | : | |
| Defendant. | : | |

Plaintiffs moved to set aside United States Department of Labor's ("Labor") determination that they were ineligible for NAFTA Transitional Adjustment Assistance benefits ("NAFTA-TAA") pursuant to 19 U.S.C. § 2331 (1994) ("Act"). Plaintiffs raised two issues in support of motion. First, that had Labor considered the "appropriate subdivision" of corporation advocated by Plaintiffs, it would have found them eligible for NAFTA-TAA due to a one-step shift in production from corporation's McKenzie, Tennessee, plant ("McKenzie") to Mexico. Second, that Labor should have provided Plaintiffs with a "reasoned statement" of why it used the appropriate subdivision it did. The United States Court of International Trade, Eaton, J., held: (1) under Labor's "product line analysis" there was no shift in production from McKenzie to Mexico; and (2) Labor was under no obligation to provide Plaintiffs with a reasoned statement as to the appropriate subdivision used because Plaintiffs themselves identified McKenzie as the appropriate subdivision and never argued otherwise until commencement of this action and, in any event, Labor took into account possibility that production had shifted from McKenzie to Mexico and provided Plaintiffs with a sufficient statement of why no such shift occurred.

[Plaintiffs' motion for judgment on agency record denied; Labor's negative determination affirmed; action dismissed.]

Decided: June 13, 2001

*Renee L. Bowser*, Assistant General Counsel, United Food and Commercial Workers International Union, for Plaintiffs.

*Stuart E. Schiffer*, Acting Assistant Attorney General of the United States; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Velta A. Melnbrencis*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Lauren S. Moore*), for Defendant.

## OPINION

**EATON, JUDGE:** Before the Court is the Former Employees of Carhartt, Inc.'s ("Plaintiffs") Motion for Summary Judgment[1] contesting the United States Department of Labor's ("Labor") decision denying Plaintiffs' petition for North American Free Trade Agreement Transitional Adjustment Assistance benefits ("NAFTA-TAA"). The Court has jurisdiction pursuant to 28 U.S.C. § 2395(a) (1994) and 19 U.S.C. § 1581(d)(1) (1994). For the reasons set forth below, the Court finds that Labor's decision is supported by substantial evidence and is in accordance with law, and therefore denies Plaintiffs' motion.

## BACKGROUND

Plaintiffs were employed at the McKenzie, Tennessee ("McKenzie"), plant of Carhartt, Inc. ("Carhartt") and, until the closing of that facility in June 1999, manufactured bib overalls. Plaintiffs allege that they lost their jobs when McKenzie's production of bib overalls was shifted to Carhartt's Camden, Tennessee ("Camden"), facility and Camden's production of hooded jackets was shifted to Mexico.

On February 28, 1999, Plaintiffs applied for NAFTA-TAA by filing a "Petition for

---

[1]     Although Plaintiffs style their motion as one for summary judgment, the Court treats it as a motion for judgment on the agency record pursuant to USCIT Rule 56.1.

NAFTA Transitional Adjustment Assistance"[2] with Labor. (P.R. at 1.) In their petition,

Plaintiffs named the McKenzie facility as the "appropriate subdivision" of Carhartt within the

meaning of section 250 of the Trade Act of 1974, as amended, 19 U.S.C. § 2331 (1994) ("Act").

(Id.) Labor acknowledged this filing in the Federal Register, see Investigations Regarding

Certifications of Eligibility To Apply for NAFTA Transitional Adjustment Assistance, 64 Fed.

Reg. 16,757, 16,758 (Apr. 6, 1999), and, after conducting an investigation of Plaintiffs' claim,

(C.R. at 20–21), concluded that Plaintiffs were not eligible for NAFTA-TAA because

"production was shifted to Mexico of unsimiliar products produced at the subject firm and

therefore insignificant. [sic]" (P.R. at 23.) On April 14, 1999, Labor notified Plaintiffs by letter

of its negative determination (P.R. at 22–24), and, on May 11, 1999, published a notice to that

effect. See Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment

Assistance and NAFTA Transitional Adjustment Assistance, 64 Fed. Reg. 25,371, 25,373 (May

11, 1999).

By letter dated May 6, 1999, Gary Phaup, Carhartt's Vice President of Manufacturing,

sought administrative reconsideration of Labor's negative determination.[3] This letter stated that

"some of [the McKenzie] production will be transferred to [Camden]. Some of the product

---

[2] Plaintiffs also applied for Trade Adjustment Assistance ("TAA") under section 222 of the Trade Act of 1974, as amended, 19 U.S.C. § 2271 (1994). However, Plaintiffs' TAA claim is not before the Court and, therefore, is not addressed here.

[3] This letter was initially filed with the clerk of this court. However, after it was ascertained that it was Mr. Phaup's intention to apply for administrative reconsideration—not judicial review—of Labor's negative determination, Mr. Phaup was instructed to contact the Department of Labor's Office of Trade Adjustment Assistance in Washington, D.C. (Letter from Gordon to Phaup of 5/17/99.)

previously made in the Camden facility has been transferred to Mexico—this allowed the transfer of production from McKenzie to Camden." (P.R. at 32.) Although this letter became well-traveled, by August 9, 1999, it found its way to the Office of Trade Adjustment Assistance ("OTAA"), accompanied by a note from Labor's Tennessee office, stating that it was Mr. Phaup's "intention . . . to request reconsideration for both the NAFTA and the TAA." (P.R. at 31.)

On October 12, 1999, Grant Beale, Program Manager of OTAA, wrote Mr. Phaup noting receipt of the May 6, 1999, letter and acknowledging his request for reconsideration of Labor's negative determination. (P.R. at 36; see also Carhartt, Inc., McKenzie, Tennessee; Negative Determination on Application for Reconsideration, 64 Fed. Reg. 69,035 (Dec. 9, 1999) ("Negative Determination").) Mr. Beale's letter stated that "[t]he Department's denial notice for [NAFTA-TAA] is now final since the filing period for administrative reconsideration has expired." (P.R. at 36.) Nonetheless, Mr. Beale also stated that OTAA had "informally" reviewed Carhartt's request, and concluded that reconsideration of Labor's initial determination was not warranted. (Id.) Labor published notice of this denial of reconsideration in the Federal Register. See Negative Determination, 64 Fed. Reg. at 69,035 ("The Department cannot consider the domestic shift of production of bib overalls from McKenzie, Tennessee to Camden, Tennessee as a basis for worker group certification.").

By letter dated December 9, 1999, Plaintiffs petitioned for judicial review of Labor's negative determination. The clerk of this court deemed the letter a summons and complaint

sufficient to commence this action.[4]


## DISCUSSION

Plaintiffs present two arguments in support of their motion.  First, Plaintiffs claim that

Labor erred in its application of the Act to the facts of their case by not considering Plaintiffs'

proposed method for determining what constituted the proper appropriate subdivision of

Carhartt.  Specifically, Plaintiffs argue that the proper appropriate subdivision included both the

McKenzie and Camden facilities together, and not the McKenzie plant alone.  Had this

appropriate subdivision been considered, Plaintiffs maintain, Labor would necessarily have

found that Plaintiffs lost their jobs due to a one-step shift in manufacturing production.  Second,

Plaintiffs claim that Labor was under a duty to provide them with a "reasoned statement" as to

why it did not consider Plaintiffs' method of determining the appropriate subdivision.  The Court

finds neither argument persuasive.


## I.      Appropriate Subdivision

The central issue in this action is whether Labor should have considered Plaintiffs'

---

[4]      Although Plaintiffs' filings are not in strict compliance with 19 U.S.C. § 2395(a) and 29 C.F.R. §§ 90.18(a), 90.19(a) (1997), the Court deems them timely for two reasons.  First, Labor acknowledged the filing of Plaintiffs' application as of May 6, 1999.  See Negative Determination, 64 Fed. Reg. at 69,035 ("By letter of May 6, 1999, the company requested administrative reconsideration of the Department's negative determination regarding eligibility to apply for Trade Adjustment Assistance . . . . Company officials have now indicated that it was their intention to also request reconsideration of the Department's negative determination [of] eligibility to apply for [NAFTA-TAA].").  Second, OTAA, by responding to Plaintiffs' allegations, and then publishing its Negative Determination, has either (1) related Plaintiffs' subsequent filings to the date of the request for reconsideration or (2) treated their subsequent filings as amendments to that application.

method of applying the Act to the facts. Title 19, section 2331 addresses job losses due to shifts in production from the United States to Mexico under the North American Free Trade Agreement:

> A group of workers . . . shall be certified as eligible to apply for adjustment assistance . . . if the Secretary determines that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated . . . and . . . that there has been a shift in production by such workers' firm or subdivision to Mexico . . . of articles like or directly competitive with articles which are produced by the firm or subdivision.

19 U.S.C. § 2331(a)(1)(B). The applicable regulation[5] defines an "appropriate subdivision" for the purposes of the Act as "an establishment in a multi-establishment firm which produces the domestic articles in question or a distinct part or section of an establishment (whether or not the firm has more than one establishment) where the articles are produced." 29 C.F.R. § 90.2 (1997). This court has consistently upheld the "well-settled principle that determinations of what constitutes an appropriate subdivision must be made along product lines." Abbott v. Donovan, 6 CIT 92, 99, 570 F. Supp. 41, 48 (1983) (citing Pemberton v. Marshall, 639 F.2d 798, 801 (D.C. Cir. 1981)); see also Lloyd v. United States Dep't of Labor, 637 F.2d 1267, 1275 (9th Cir. 1980); Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Marshall, 584 F.2d 390, 396–98 (D.C. Cir. 1978) ("Marshall"); Paden v. United States Dep't of Labor, 562 F.2d 470, 475 (7th Cir. 1977). The product line analysis has been examined by this court in the context of

---

[5]     The NAFTA-TAA program was originally envisioned as a temporary measure, to be fully implemented at a later date. See Former Employees of Champion Aviation Prods. v. Herman, 24 CIT __, __, Slip Op. 00-23, at 5–6 (Feb. 25, 2000). To date, the contemplated comprehensive program has yet to be enacted, and Labor has not promulgated a separate set of regulations covering NAFTA-TAA. Therefore, the Court in its interpretation of NAFTA-TAA is guided, where appropriate, by the TAA regulations.

NAFTA-TAA.  See Former Employees of Champion Aviation Prods. v. Herman, 23 CIT __, Slip

Op. 99-48 (June 4, 1999) ("Champion I"), dismissed by Former Employees of Champion

Aviation Prods. v. Herman, 24 CIT __, Slip Op. 00-23 (Feb. 25, 2000) ("Champion II").  The

plaintiffs in Champion[6] were employed at a Pennsylvania factory that manufactured aviation

products.  Champion I, 23 CIT at __, Slip Op. 99-48, at 2.  The plaintiffs alleged that they lost

their jobs due to a two-step shift in production when the parent company moved its production of

aviation products from the Pennsylvania plant to a Tennessee facility that manufactured

automotive lamps and then, in order to allow the Tennessee facility to absorb the aviation

production, shifted the production of automotive lamps from Tennessee to Mexico.  Champion I,

23 CIT at __, Slip Op. 99-48, at 2.  Labor, using the product line analysis, denied the plaintiffs'

NAFTA-TAA claim because, although a shift in production actually took place, the articles

previously manufactured at the plant where the employees lost their jobs were neither like nor

directly competitive with those made at the plant in Mexico to which production had been

shifted.  Champion II, 24 CIT at __, Slip Op. 00-23, at 4.  The plaintiffs challenged Labor's use

of the product line analysis, arguing that "an analysis that does not account for situations where a

shift in production occurs in more than one step is unreasonable."  Champion I, 23 CIT at __,

Slip Op. 99-48, at 5.  The court, after reviewing the legislative history of NAFTA-TAA,

remanded the case for further fact-finding, and encouraged Labor to expand its methodology so

as to include more factors than would be considered in an analysis that relied solely upon product

lines.  Champion I, 23 CIT at __, Slip Op. 99-23, at 6–7.  On remand, Labor affirmed its reliance

on the product line analysis by citing identical language in both TAA and NAFTA-TAA, and

_____

          [6]          The Court refers to Champion I and Champion II collectively as "Champion."

observing that the language of the TAA had received judicial construction. Champion II, 24 CIT

at __, Slip Op. 00-23, at 5. The court, in affirming Labor's determination, commented:

> Labor maintains that absent clear legislative history to the contrary,
> Congress, by placing identical language in 19 U.S.C. §
> 2331(a)(1)(B), is presumed to have adopted these judicial
> constructions, thereby requiring shifts in production to be
> measured along product lines. While this is merely a rule of
> statutory construction, and like any other should yield when the
> clear purpose of the statute requires it, in this instance the
> construction sought by Plaintiffs is simply too different absent
> some indication by Congress that it so intends.

Champion II, 24 CIT at __, Slip Op. 00-23, at 5 (internal citations omitted).


        The facts in Champion and the case at bar are remarkably similar. Plaintiffs, however,

maintain that their situation is distinguishable from that in Champion, in that their jobs were not

lost due to a two-step shift in production but, rather, due to a one-step shift. Plaintiffs set out

their argument that a one-step shift in production from McKenzie to Mexico occurred as follows:

> Given that the McKenzie and Camden plants satisfy the
> requirements of an appropriate subdivision under § 2331(a)(1)(B),
> [Labor] erred in failing to determine that there was a shift in
> production by Carhartt from the appropriate subdivision to Mexico
> of articles like or directly competitive with articles previously
> produced domestically by the subdivision. In this regard, the same
> subdivision which partially discontinued operation with the shut
> down of the McKenzie plant is the same subdivision which
> transferred a portion of its work to Carhartt's Mexico plant.
> Therefore, with the closure of McKenzie and the transfer of bib
> overall production from McKenzie to Camden and then the
> removal of jacket production from Camden to Mexico, there
> occurred a shift in production from the appropriate subdivision to
> Mexico in one step.

(Pls.' Mem. Supp. Mot. Summ. J. at 8–9.)

Though somewhat difficult to piece together, Plaintiffs' argument can be set out as follows. First, because the Camden employees sewed pockets[7] on the same bib overalls that the McKenzie employees finished, then all of the Camden and McKenzie employees were part of a subdivision of Carhartt that worked on the bib overall product line. Next, because the Camden employees did not work solely on bib overalls, but were transferred between the tasks of working on bib overalls and hooded jackets, the Camden employees should be considered as working on both the bib overall and hooded jacket product lines. Finally, because the McKenzie and Camden employees all worked on the bib overall product line, and because the Camden employees worked on both the bib overall and hooded jacket product lines, when Carhartt shifted its production of hooded jackets from Camden to Mexico and then shifted the entire manufacture of bib overalls to Camden, the McKenzie employees lost their jobs due to a one-step shift in production to Mexico. Plaintiffs ask the Court to reach this conclusion even though no McKenzie employee was actually engaged in the manufacture of hooded jackets—the only product line whose manufacture was shifted to Mexico.

While showing a certain inventiveness, Plaintiffs' argument must fail. The product line analysis simply does not allow for this kind of bootstrapping. It is a basic requirement of the product line analysis that the articles produced by the displaced employees must be "like or directly competitive" with those whose production was shifted to Mexico. Bib overalls are not hooded jackets, and no amount of artful advocacy can change this simple fact. While it may well

---

[7]     The allegation that the Camden employees were involved in the production of bib overalls is not presented in the administrative record. Rather, it is alleged by Plaintiffs in their brief.

be that the McKenzie workers lost their jobs due to a shift of production to Mexico, it is not the

kind of shift contemplated by the Act.  It is, in fact, identical to the two-step shift in production

analyzed and rejected by the court in Champion.


II.     **Reasoned Statement**

Plaintiffs contend that "[Labor] should respond to a plaintiff's interpretation of what

constitutes an appropriate subdivision under the statute with a reasoned statement explaining

why such interpretation will not be adopted."  (Pls.' Mem. Supp. Mot. Summ. J. at 6 (citing Int'l

Union, United Auto., Aerospace & Agric. Implement Workers v. Reich, 22 CIT __, __, 20 F.

Supp. 2d 1288, 1293 (1998) ("Reich").)  Thus, Plaintiffs argue that, because they put forth an

interpretation of what constituted the appropriate subdivision, Labor was required to respond

with a reasoned statement as to why the McKenzie and Camden plants together were not adopted

as the appropriate subdivision for the purposes of the Act.  However, this argument does not

accurately reflect case law.  The proposition cited by Plaintiffs, more fully stated, is that "when a

petitioner under a government benefits program puts forward an interpretation of a legislative

provision that is arguably consonant with the statutory language, he is at least entitled to a

reasoned statement why the administrator will not adopt that interpretation."  Reich, 22 CIT at

__, 20 F. Supp. 2d at 1293 (citing Marshall, 584 F.2d at 396).  Had Plaintiffs put forth an

"arguably consonant" interpretation of what constitutes an appropriate subdivision, Labor would

have been required to respond with a written explanation of why it was not adopted.  However,

the Court is not persuaded by Plaintiffs' argument for two reasons.


First, it is clear from the administrative record that Plaintiffs never asserted that

McKenzie and Camden, in combination, constituted the proper appropriate subdivision at the administrative level.  In fact, it was Plaintiffs themselves who initially proposed McKenzie as the appropriate subdivision.  (P.R. at 1.)  Indeed, until the filing of their brief with this Court, Plaintiffs consistently argued that the appropriate subdivision was the McKenzie plant, and the McKenzie plant alone.  Labor, during its investigation, could not respond to an argument that the Plaintiffs raise here for the first time.

Second, although Plaintiffs did not initially argue that McKenzie and Camden, together, constituted the appropriate subdivision, Labor nonetheless took this possibility into account.  As previously noted, Labor's investigation revealed that no bib overall production was shifted to Mexico and, moreover, that the only production shifted was of "unsimiliar products . . . and therefore insignificant. [sic]"  (P.R. at 23.)  Indeed, Labor, in its notice denying reconsideration of Plaintiffs' claim, specifically stated that it could not "consider the domestic shift of production of bib overalls from McKenzie, Tennessee to Camden, Tennessee as a basis for worker group certification."  Negative Determination, 64 Fed. Reg. at 69,035.[8]

---

[8]     The Court notes that relevant case law has held that, "[i]f the company under investigation is part of a larger corporate entity, the Secretary has a duty of providing a description of the organizational structure and of inquiring into how the subject company fits into the organization."  Former Employees of Linden Apparel Corp. v. United States, 13 CIT 467, 470, 715 F. Supp. 378, 381 (1989), quoted in Champion I, 23 CIT at __, Slip Op. 99-48, at 8.  While the Court recognizes this requirement, the narrow facts of this case do not demand its application.  Plaintiffs have, through their own submissions (see P.R. at 32), adequately outlined the relevant corporate organizational structure of Carhartt, and McKenzie's place therein.  Moreover, Labor did provide a description of that structure.  In its notice denying reconsideration, Labor explained "[t]he Department cannot consider the domestic shift of production of bib overalls from McKenzie, Tennessee to Camden, Tennessee as a basis for worker group certification."  Negative Determination, 64 Fed. Reg. at 69,035.  Because Labor's investigation clearly revealed that there was no shift in the production of bib overalls from any subdivision of Carhartt that might have included McKenzie to Mexico, the foregoing statement,

Therefore, because: (1) Plaintiffs themselves proposed McKenzie as the appropriate subdivision and never complained of Labor's so finding until the briefing in this action; and (2) Labor actually inquired into the possibility that McKenzie's production had shifted to Mexico and gave a sufficient explanation as to why no such shift occurred, Labor was under no obligation to provide Plaintiffs with a further written statement as to why it did not use their claimed method of applying the product line analysis to the facts of this case.

## CONCLUSION

For the foregoing reasons, the Court finds that Labor's determination is supported by substantial evidence and is otherwise in accordance with law, and thus declines to set aside Labor's determination that Plaintiffs are ineligible for NAFTA-TAA. Accordingly, Plaintiffs' motion for judgment on the agency record is denied and this action is dismissed.

_____
Richard K. Eaton

Dated: June 13, 2001
       New York, NY

---

while brief, sufficiently describes Carhartt's corporate organizational structure and McKenzie's place therein.